UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In the Matter of SUSAN MALEWICZ,                Chapter 13

                                                                     Case No. 8-09-74807-reg
                                 Debtor.
-----------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is a motion (the "Motion"), by the Debtor's non-filing spouse, Jay Grotenstein (the "Non-Debtor Spouse"), which seeks an order of this Court finding that his share of a post-confirmation joint tax refund need not be disgorged to the chapter 13 trustee (the "Trustee"). In opposition, the Trustee argues that the confirmed chapter 13 plan (the "Plan") provides for the turn over to the Trustee of the Debtor's post-confirmation tax refunds. The Trustee asserts that this obligation includes the requirement that the Non-Debtor Spouse's share of such refunds must also be remitted to the Trustee for distribution to the Debtor's creditors pursuant to the Plan. Although not framed in this manner by the Trustee, the issue before the Court is whether the failure to surrender the Non-Debtor Spouse's share of the tax refunds constitutes a default under the Plan.

Under the facts of this case, the Court finds no basis either at law or under the terms of the Plan to compel the Non-Debtor Spouse to turn over his property to the Trustee, or find that the Debtor is in default of her Plan for his failure to do so. First, under Sections 1306 and 541 of the Code the Non-Debtor Spouse's share of the joint tax refund is not property of the post-confirmation estate. Second, although the calculation of "projected disposable income" under the chapter 13 means test included a portion of the Non-Debtor Spouse's monthly income, that calculation is used only to arrive at the Debtor's monthly plan payment obligation. In and of

itself this does not afford the Trustee any right to compel the Non-Debtor Spouse to contribute his property to the Plan. Finally, nothing in the confirmed Plan requires the Non-Debtor Spouse to surrender his portion of the post-confirmation joint tax refund. Therefore, the Motion is granted.

### *Background*

On June 27, 2009, the Debtor filed a chapter 13 petition and a proposed plan. On June 29, 2009 and July 1, 2009 a "Summary of Plan", which included notice of the confirmation hearing and a deadline for objections, was served on the Debtor and her counsel, the Trustee, the United States Trustee and creditors. According to the affidavit of service, the Non-Debtor Spouse was not given notice of the confirmation hearing. There were no filed objections to confirmation and on December 17, 2009, the Debtor's amended chapter 13 plan was confirmed by order of the Court (the "Plan Confirmation Order").

The Plan provides for a seven percent *pro rata* distribution to unsecured creditors and states the following:

> During the pendency of this case, if unsecured creditors are paid, pursuant to paragraph 2c, less than one hundred percent (100%), the debtor(s) shall provide the Trustee with signed copies of filed federal and state tax returns for each year no later than April 15th of the year following the tax period. *Indicated tax refunds are to be paid to the Trustee upon receipt, however, no later than June 15th of the year in which the tax returns are filed.*

(emphasis added). The Plan Confirmation Order states that

> [a]ll property of the estate, including any income, earnings, or, or [sic] other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan shall revest in the Debtor(s); provided

> however, that no property received by the Trustee for the purpose of distribution under the Plan shall revest in the Debtor(s) except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the Plan. Such property as may revest in the Debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account.

In response to a demand by the Trustee to turn over his share of the joint tax refund the Non-Debtor Spouse filed the instant Motion on June 29, 2010. In the Motion, the Non-Debtor Spouse asks the Court to "[e]xclude [his share of the] income tax refund for 2009 from any moneys available to the Trustee." The Trustee filed an Affidavit in Opposition on July 22, 2010, wherein he argues that (i) the Debtor chose to file joint tax returns, (ii) there is no mention in the Plan that there can be an exclusion for the Non-Debtor Spouse's tax refund if the Debtor files a joint tax return, and (iii) the Code requires all household income to be pledged to pay unsecured creditors.

The Non-Debtor Spouse and the Trustee appeared at hearings held on August 26, 2010 and September 16, 2010 at which time the Court made a ruling on the record granting the relief sought by the Non-Debtor Spouse. This Memorandum Decision followed.

*Discussion*

The authority for a chapter 13 trustee to require turnover of post-confirmation tax refunds has been the subject of several published decisions. *See, e.g.*, *In re Midkiff*, 271 B.R. 383 (B.A.P. 10th Cir. 2002); *In re Martin*, 08-43189-DML, 2009 WL 1911760, at *1 (Bankr. N.D. Tex. July 2, 2009); *In re Abener*, 234 B.R. 825, 826 (Bankr. M.D. Ala. 1999). The practical concern raised by chapter 13 trustees which, they claim, necessitates this relief is that when a confirmed plan does not require the debtor to turnover tax refunds, debtors may manipulate

deductions claimed on their W-2s to reduce income received on a monthly basis and thereby avoid paying a portion of their total yearly income to unsecured creditors. *See, e.g.*, *In re Midkiff*, 271 B.R. at 387 (stating that to exclude the debtors' tax refunds "would allow debtors to manipulate the system by filing tax returns after completion of the plan and therefore avoid payment to creditors") (citing *In re Abener*, 234 B.R. at 826).

Mindful of the potential for abuse, courts have found that turnover of a debtor's post-confirmation tax refunds is appropriate in circumstances where (1) post-confirmation tax refunds are property of the estate under Sections 1306 and 541 and therefore are subject to turnover, (2) post-confirmation tax refunds are included in "projected disposable income" and therefore must be committed to the chapter 13 plan, and/or (3) the terms of the confirmed chapter 13 plan specifically require that post-confirmation tax refunds be turned over to the Trustee.

The parties have not raised, and this Memorandum Decision does not address, whether it is appropriate for the Trustee to require the turnover of *the Debtor's* post-confirmation tax refunds. The issue in this case is limited to whether the Trustee can require turnover of *the Non-Debtor Spouse's* share of the post-confirmation tax refund.

### *Property of the Estate*

Because in this case the Debtor has agreed in the Plan to turn over to the Trustee post confirmation tax refunds it is important to determine if the Non-Debtor Spouse's share of the refund is property of the estate. The composition of the post-petition chapter 13 estate is defined by Sections 1306 and 541, by reference. Section 1306(a) includes in "property of the estate," property specified in section 541, and "(1) all property of the kind specified [in 541] that the

debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . and (2) earnings from services performed *by the debtor* after the commencement of the case but before the case is closed, dismissed or converted . . . ." 11 U.S.C. § 1306(a) (emphasis added). Section 541(a) provides that the "estate is comprised of all the following property, wherever located and by whomever held":

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--
>
>> (A) under the sole, equal, or joint management and control of the debtor; or
>>
>> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a).

*In re Martin*, a case decided by the Bankruptcy Court for the Northern District of Texas, addressed whether a tax refund from a jointly filed tax return was property of the debtor's chapter 13 estate. *In re Martin*, 2009 WL 1911760 at *1. The debtor in that case and her non-debtor spouse filed a joint tax return for a year in which the debtor did not earn wages. *Id*. The $6,482.00 refund for that year was therefore based entirely on the non-debtor spouse's income and earnings. *Id*. By order of the court, a portion of the refund was applied first to cure arrears and bring the debtor's plan payments current. *Id*. The remainder of the refund was held by the chapter 13 trustee pending final determination by the court as to who was entitled to the balance. *Id*.

The *Martin* court ultimately decided that the remaining portion of the refund was not

property of the debtor's estate and therefore the funds should be returned to the non-debtor spouse. *In re Martin*, 2009 WL 1911760 at *3. The court based its decision on an analysis of Section 541(a)(2)(A) of the Code which states that interests of the debtor that pass to the estate include "all interests of the debtor and the debtor's spouse in community property . . . that is-(a) under the sole, equal, or joint management and control of the debtor." *Id*. at *1 (*citing* 11 U.S.C. § 541(a)(2)). The court then examined the relevant state law and determined that although the tax refund was community property under Texas state law, it was not under the sole or joint management of the debtor and therefore was not property of the estate. *Id*. at *3. The chapter 13 trustee was ordered to return $4,482.00 of the tax refund to the non-debtor spouse.

Thus, the holding in *In re Martin* is that for a non-debtor spouse's post-confirmation tax refund to be considered property of the estate the debtor would have to have a community property interest in the spouse's share of the tax refund and possess the requisite control required by the statute. New York, however, is not a community property state. *In re Vebeliunas*, 332 F.3d 85, 92 (2d Cir. 2003). As such, the Court finds that there is no basis to conclude that the Non-Debtor Spouse's interest in the tax refund is property of the estate under the Bankruptcy Code. Other than Section 541(a)(2), there is no other section of the Code which would include a non-debtor spouse's property in "property of the estate."

*Projected Disposable Income*

Other courts have permitted the chapter 13 trustee to require the turnover of post-confirmation tax refunds under the theory that the refunds must be included in the calculation of a debtor's "projected disposable income." Pursuant to Section 1325(b), when the chapter 13

trustee or the holder of an allowed unsecured claim objects to confirmation, the court "may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of *the debtor's* projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). The statute does not define "projected disposable income," but pursuant to BAPCPA amendments, it does state that "disposable income" is "current monthly income" (a defined term) less "amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2). Also added in the BAPCPA amendments, "current monthly income" is defined in Section 101(10A) as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . . . [and it] *includes any amount paid by any entity other than the debtor* (or in a joint case the debtor and the debtor's spouse), on a regular basis for the *household expenses* of the debtor or the debtor's dependents . . . ." 11 U.S.C. § 101(10A) (emphasis added).

In a pre-BAPCPA case involving joint debtors, at least one court found that post-petition tax refunds must be turned over to the chapter 13 trustee in addition to regular monthly plan payments, because those funds were included in the debtors' projected disposable income. In *In re Abner*, the debtors filed a joint chapter 13 petition in January and they received a $3,800 tax refund the following month. *In re Abner*, 234 B.R. at 825. The plan proposed to pay less than 100% to unsecured creditors and the Trustee objected to confirmation on the basis that the debtors had not committed all of their projected disposable income towards repayment of unsecured creditors. *Id*. at 826. The issue was whether the debtors were "required to commit tax

refunds received during pendency of the plan." *Id*. (finding that this could be accomplished "either by remitting the refund check to [sic] trustee or increasing the amount paid to unsecured creditors where the plan offers less than 100% to unsecured creditors"). The court found that the plan did not conform to Section 1325(b)(1)(B), and reasoned that a pattern of consistently receiving a tax refund under similar withholding and income was sufficient basis to include the tax refund in projected disposable income. *Id*. (citing *In re Heath*, 182 B.R. 557 (B.A.P. 9th Cir. 1995) (finding that the burden shifts to the debtor to show that no tax refund is projected)).

At least one post-BAPCPA case involving an individual debtor and a non-filing spouse found that "current monthly income" includes amounts paid by a non-debtor spouse on a regular basis for household expenses but does not include all of the non-debtor spouse's income. *See In re Quarterman*, 342 B.R. 647, 650-51 (Bankr. M.D. Fla. 2006) (citing section 101(10A)). The court reasoned:

> Prior to BAPCPA, several courts addressed the issue of whether a debtor's non-filing spouse's income should be considered when determining whether all of a debtor's disposable income is being applied to the debtor's Chapter 13 plan. The majority of courts have held that the court must consider the income of a non-debtor spouse in calculating the debtor's disposable income. *See In re Williamson*, 296 B.R. 760, 764 (Bankr. N.D. Ill. 2003) (stating that the failure to consider the impact of the non-debtor spouse's income would leave the debtor's unsecured creditors to subsidize the spouse's expenses); *In re McNichols*, 249 B.R. 160, 170 (Bankr. N.D. Ill. 2000) (stating that the totality of the family's income is appropriately considered in calculating a debtor's disposable income); *In re Ehret*, 238 B.R. 85, 88 (Bankr. D. N.J. 1999) (stating that the inclusion of a non-debtor spouse's income is appropriate when determining a debtor's disposable income); *but see In re Nahat*, 278 B.R. 108, 114 (Bankr. N.D. Tex. 2002) (stating that section 1325(b)(2) defines disposable income as income "received by the debtor").
>
> However, . . . Congress amended the definition of disposable income, in section 1325(b)(2), to state that disposable income means "current monthly income received by the debtor ... less amounts reasonably necessary to be expended-(A)(i) for the maintenance or support of the debtor or a dependent of

> the debtor...." 11 U.S.C. § 1325(b)(2) (2005) (emphasis added). According to section 101(10A), "[t]he term 'current monthly income'-(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable ... derived during the 6-month period ending on-(i) the last day of the calendar month immediately preceding the date of the commencement of the case...." 11 U.S.C. § 101(10A) (2005) (emphasis added). The parenthetical stating that, in a joint case, a debtor's current monthly income shall include the debtor's spouse's income suggests that, in a single case, the spouse's income is not included in the debtor's current monthly income; otherwise, the parenthetical would be superfluous. However, part (B) of section 101(10A), states that current monthly income also "includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)...." 11 U.S.C. § 101(10A)(B). Applying the same reasoning as above, it appears that, in a single case, a debtor's spouse's income shall be included in the debtor's current monthly income to the extent that it is paid "on a regular basis for the household expenses of the debtor or the debtor's dependents." Thus, based upon the explicit language of section 101(10A), current monthly income does not include all the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income.

*In re Quarterman*, 342 B.R. at 650-51 (footnotes omitted).

This Court agrees with the statutory analysis in *Quarterman* and the conclusion that a non-debtor spouse's entire income is not included in the "projected disposable income" analysis. This Court further finds that the funds contributed by a non-debtor spouse towards household expenses, and included in the projected disposable income analysis, are not specifically "pledged" or earmarked for turnover to the trustee. In this Court's view, the non-debtor spouse is not obligated to make the plan payments or contribute his income towards payment of the plan. *See* 11 U.S.C. § 1325(a)(6) (known as the "feasibility standard", stating that the court "shall confirm a plan if . . . *the debtor* will be able to make all payments under the plan and to comply with the plan") (emphasis added). The Debtor is obligated under the Bankruptcy Code

Page 9 of 13

to make payments under the confirmed Plan or risk dismissal of the case. Nothing in the Code obligates anyone other than the Debtor to fulfill the requirements of the confirmed Plan.

The Court finds for the reasons stated above that while a non-debtor spouse's income is considered in determining projected disposable income this cannot in and of itself be the basis to require the non-debtor spouse to contribute such income for distribution to creditors under the Plan.

*The Plan Controls*

In general, the provisions of a confirmed plan are binding on the debtor and creditors. 11 U.S.C. § 1327(a); *see also United Student Aid Funds v. Espinosa*, — U.S. —, 130 S.Ct. 1367, 1380, 176 L.Ed. 2d 158 (2010) (finding that a confirmed plan is binding provided that the creditor has been given adequate notice). At least one court has found it to be appropriate to permit the chapter 13 trustee to require the turnover of post-confirmation tax refunds of joint debtors on the basis that the plan provided for the same. *See In re Midkiff*, 271 B.R. 383 (B.A.P. 10th Cir. 2002). Under this theory, the Trustee would need to point to specific and clear language in the confirmed Plan that identifies and includes the property sought to be turned over.

In the instant case, the Trustee argues that the Plan specifically requires the turnover of post-confirmation tax refunds and does not specifically exclude the Non-Debtor Spouse's share of those tax refunds. While the Court agrees that the instant Plan requires turnover of the Debtor's post-confirmation tax refunds, the Plan does not explicitly require turnover of the Non-Debtor Spouse's share of the tax refund. The confirmed amended Plan states that if the plan is less than a 100% plan, "*the debtor(s) shall provide* the Trustee with signed copies of filed federal

and state tax returns for each year . . . . *Indicated tax refunds* are to be paid to the Trustee upon receipt . . . ." The words "the debtor(s) shall provide" clearly require the Debtor to turnover copies of tax returns. The words "[i]ndicated tax refunds" are ambiguous because specific tax refunds were not "indicated" in the Plan – only "tax returns" were mentioned. The Court cannot read the words, "indicated tax refunds" to reach the Non-Debtor Spouse's property. Even if it could be inferred that the "[i]ndicated tax refunds" are those that correspond to the tax returns of which the Debtor was to provide copies, the Plan makes no reference to the Non-Debtor Spouse or to jointly filed returns. Without a specific reference to the tax refunds in question and a specific reference to the Non-Debtor Spouse's share, the Court cannot infer that the Plan reaches the Non-Debtor Spouse's share in post-confirmation tax refunds.

Nor does the Plan Confirmation Order, which conforms to the form used in all chapter 13 cases before this Court, require that the Non-Debtor Spouse's interest in post-confirmation tax refunds be devoted to the Plan. The Plan Confirmation Order states that "all property of the estate, including any income, earnings, or, other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan shall revest in the Debtor(s) . . . ." This provision makes no specific reference to the Non-Debtor Spouse's interest in property and the Court will not read it so broadly as to include the Non-Debtor Spouse's interest in the post-confirmation tax refunds. Moreover, as discussed above, the Non-Debtor Spouse's share in post-confirmation tax refunds is neither "income" nor "earnings . . . that [would] become property of the estate" pursuant to the language in the Plan Confirmation Order.

Even if the Plan contained specific language referring to the Non-Debtor Spouse and

identified his share of the post-confirmation tax refunds, this Court would have to make a separate finding that the Plan was binding on the Non-Debtor Spouse *and* provided a basis upon which to compel the turnover of funds from the Non-Debtor Spouse.  The Plan in the instant case is not binding on the Non-Debtor Spouse.  To the extent that the tax refund provision of the Plan can be interpreted between the parties, it is binding only on the debtor and creditors.   The facts of this case are distinguishable from *In re Midkiff* in that the spouses there were both debtors.  Therefore, the plan was binding on both spouses and their joint property was subject to the jurisdiction of the court.  In the instant case, the Non-Debtor Spouse is not a debtor nor has it been alleged that he is a creditor.  No assertions have been made that the Non-Debtor Spouse was a party to the chapter 13 plan or the confirmation process.  He did not file in this bankruptcy as a joint debtor and he was not given an opportunity to object to confirmation of the Plan.  Therefore, even if this Court were inclined to read the terms of the Plan to require the turnover of the Non-Debtor Spouse's post-confirmation tax refunds, the Court could not find that the Plan is binding on him.  Nor would this Court find that any binding provision of a chapter 13 plan would divest a non-debtor of any property.  Rather, assuming the plan were clear and binding, at most, the Court would find that the failure to turnover property would constitute a plan default.

The Court also notes that the Trustee mentioned at the August 26, 2010 hearing that the Non-Debtor Spouse had provided a signed affidavit of contribution.  The affidavit of contribution is an example of an approach employed in this District in instances where a third party, like a spouse or relative, wishes to assist the debtor in making plan payments.  The Court does not make a determination in the instant case as to whether the affidavit would be sufficient to bind the non-debtor party because the Plan does not mention the affidavit and no affidavit has

been produced to the Court.

Finally, the Trustee argues, without explanation, that the Non-Debtor Spouse should be compelled to turn over his share of the tax refund because the Debtor chose to file joint tax returns. The Court interprets this statement to mean that the Debtor could have chosen to shield the Non-Debtor Spouse's share of the tax refund from the reach of the Trustee by filing an individual tax return, rather than a joint tax return. The Court finds that the Trustee's argument is without merit. The Debtor's choice, post-confirmation, to file a joint return does not augment the clear statutory definition of "property of the estate" and "projected disposable income," and it does not affect the terms of the confirmed plan. Therefore, the Court finds that the Trustee's argument is not persuasive.

### *Conclusion*

For the forgoing reasons, the Non-Debtor Spouse's Motion is granted, and the failure of the Non-Debtor Spouse to disgorge his portion of post-confirmation joint tax refunds to the Trustee will not constitute a default under the Plan. An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, NY
      November 4, 2010                             By: */s/ Robert E. Grossman*
                                                                              Robert E. Grossman
                                                                             U.S. Bankruptcy Judge